# APPENDIX

Notes of Cases Not Otherwise Reported.

93 789
s105 738

R. S. FINDLEY, Receiver of the Osceola Bank of Osceola, Iowa, v.
SETH RICHARDS, Defendant and Appellant, and GEO. M.
BOGGS, Intervener.

TESTIMONY REVIEWED and held to show that a contract was made
with a bank instead of its vice president, as an individual.

*Appeal from Clarke District Court.*—HON. W. H. TEDFORD, Judge.

TUESDAY, DECEMBER 18, 1894.

Action at law to recover money had and received by defendant.
Trial to a jury. Verdict and judgment for plaintiff, and defendant
appeals.— *Modified.*

*McNett & Tisdale* for appellant.

*Temple & Hardinger* for appellee.

Deemer, J.—The plaintiff is the receiver of the Osceola Bank,
and he brings this suit against the defendant to recover a sum of
money which he claims the defendant had received from the bank,
and which was charged to the defendant on the books of the bank as
an overdraft. The defendant denies that he had and received any
money from the bank, and avers that he closed his account with it
on the eighth day of November, 1887, and that since that time he
has neither kept nor authorized any one to keep an account for him
with the bank. He denies having received any money from the bank
after that date, except in the form of drafts issued by said bank, to
persons who owed him, who may have purchased drafts of the bank
in the customary manner. Denies any overdraft from the bank.
Admits there appears upon the bank books an account against him,
but denies the bank had any authority to make either the charges or
credits appearing thereon. He avers that on November 11, 1887,
one George H. Cowles was indebted to him as maker and guarantor
upon a large amount of paper, and that the bank was also largely
indebted to him upon notes which he had purchased of the bank,

(789)

through his agent, Johnson W. Richards, and which were guarantied by the bank. He further avers that on November 11, 1887, said Cowles individually sent him a draft for one thousand five hundred dollars, accompanied with a letter of instructions, which we will hereafter refer to, and that in accordance with said letter he caused to be credited the said sum of one thousand five hundred dollars, as therein directed, and retained the balance to apply on the notes of George H. Cowles. He alleges that this transaction was wholly with George H. Cowles, and that the bank had no right or authority to make any charge against him because thereof, as he was not a borrower from, nor did he authorize any one to borrow from, the bank for him; and that all the charges made against him on the books of the bank were wrongful and unauthorized. He also avers that certain credits appearing upon the bank books were wholly unauthorized. George M. Boggs intervened in the case, but his petition was dismissed, and no appeal taken. We need not consider his claims. After defendant had disclaimed the credits appearing on the bank books, the plaintiff amended his petition, increasing the claim in his petition by the amount of the credits thus repudiated. The jury, on the issues thus joined, returned a verdict for plaintiff, and defendant appeals.

The facts in the case are not seriously in dispute. The difficulties lie in the inferences to be drawn from these facts, and in the application of the law thereto. It is conceded by all parties that prior to about November 21, 1888, a corporation known as the Osceola Bank was doing a general banking business in the town of Osceola, with John W. Richards its president, George H. Cowles its vice president, and C. H. Currier its cashier. Cowles was the active business manager of the bank, and was also quite largely engaged in other business. Richards had but little to do with the active management of the bank. The defendant, Seth W. Richards, is a man of large means, and prior to November 8, 1887, had had an account with the bank, his balance being at all times quite large. John W. Richards acted as agent in the transaction of his business. On the thirty-first day of October, 1887, defendant revoked the agency of John W. Richards, and on November eighth closed his account with the bank, the bank sending him a draft for the balance to his credit at that time. Prior to the time he closed his account with the bank he had discounted a large amount of paper for Cowles individually and for the bank. About the twenty-second day of November, 1886, he discounted for the bank a large number of notes known as the "Canny sale notes," which the bank guarantied, and agreed to repurchase after eleven months from date. During the year 1887 the defendant also rediscounted for the bank a note of E. W. Bingman & Son for the sum of five thousand and four dollars, and another note of one Fowler for the sum of three thousand nine hundred and

six dollars and sixty-nine cents, and another of four thousand dollars, signed by one Painter, all of which were guarantied by the bank. Other notes were rediscounted by defendant for the bank upon the bank's guaranty. During this time the defendant held notes of George H. Cowles for four thousand dollars and five thousand dollars, upon which C. H. Cowles, the father of George H., was surety; also a note of W. C. Needles & Co., signed by George H. Cowles as comaker, for five thousand dollars. He had also rediscounted for George H. Cowles individually a note for four thousand five hundred dollars, made by one Bond, and another for two thousand dollars, made by one Boggs. This business was conducted for defendant largely, if not wholly, by his nephew, John W. Richards, and the papers were left, up until the time of the dissolution of the agency, with John W. Richards or the bank. About the time of the termination of the agency, defendant withdrew from the bank all his papers, notes, etc., and soon thereafter deposited them with the Iowa National Bank of Ottumwa for collection; and from and after this time kept his account with the Ottumwa Bank. About the time he received the remittance for the balance of his account with the Osceola Bank defendant wrote a letter to John W. Richards with reference to wanting some money. The letter itself we do not have, and can only judge of its contents from what follows. This letter John W. Richards turned over to George H. Cowles, and Cowles answered it by the following communication:

"Osceola Bank of Geo. H. Cowles. Osceola, Iowa, Nov. 11th, 1887. Seth Richards, Esq., Ottumwa—Dear Sir: John Richards shows me your letter of the 9th, saying you want same money. Inclosed I hand you draft for one thousand five hundred dollars, which I debit you on account. You may send us the following notes, and we will give you credit:

| | |
|---|---:|
| Michael Cronin | $ 98 70 |
| J. and C. T. Ayres | 7 00 |
| Alonzo and Robert Adams | 85 00 |
| J. J. and A. M. Baker | 20 00 |
| Frank D. and W. K. Blakely | 27 00 |
| G. W. Bevans and Wm. Cline | 126 00 |
| W. S. Cline and Bevans | 50 00 |
| Henry J. Dipperman | 26 95 |
| W. J. Hamilton | 58 50 |
| Michael Meany | 50 00 |
| F. M. Rife | 15 50 |
| Henry Twyford | 45 00 |
| Andrew Welch | 63 00 |

*Canny Sale Notes.*

"We also credit you $200.64, which indorse on E. W. Bingman & Co. note, $5,004.01, due Nov. 23, '87. I am looking for $1,000 to be

paid on Fowler note, $3,906.69, most any day. The Mason note I would like to have you carry till spring, as Mason is feeding cattle. He is one of the best men in the country, financially. These are some of these parties whose notes you had that I want to collect up at once, and some that have got to be carried along and collected as the parties can turn things; and I would like you to carry them. I will have some interest on those individual notes of mine to credit you soon. You will please write me soon, and let me know where I can find the paper when you go back to California. Would also like the privilege of using some discretion about forcing folks to pay, etc. Yours, (Signed) Geo. H. Cowles."

We have set out this letter in full, because of its importance in the case. Inclosed with the letter was a draft in the usual form for the sum of one thousand five hundred dollars, issued by the Osceola Bank on its Chicago correspondent, payable to defendant.

The first series of notes referred to in this letter are the Canny sale notes. The Bingman, Fowler, and Mason notes were rediscounted by defendant for the bank, and guarantied by it. At the time the one thousand five hundred dollar-draft was issued, George H. Cowles had no funds in the bank. He paid nothing for the draft, and the draft was neither issued to nor charged against him by the bank. It was, however, charged to the defendant upon the bank books, and on the same day he was credited with the sum of two hundred dollars and sixty-four cents, which was paid to the bank upon the Bingman note by the makers thereof. Thereafter defendant was charged with interest on monthly balances, and credited with amounts paid to the bank upon notes which it had rediscounted to defendant, and at the time the bank passed into the hands of the plaintiff as receiver the account showed aggregate debits against defendant of one thousand five hundred and fifty-nine dollars and thirty-six cents, and credits in the sum of one thousand two hundred and forty-seven dollars and seventy cents, leaving a balance due the bank, as shown by its account, in the sum of three hundred and eleven dollars and sixty-six cents. Defendant, in his answer, repudiated credits on this account of amount paid on Bogg's note October 13, 1888, to-wit, three hundred and sixty-three dollars and one cent, and of amount paid on Dipperman note, December 6, 1887, with interest, in all one hundred and eight dollars, and thereupon plaintiff asked to recover not only the balance before stated to be due on the account, but the amount of these repudiated credits as well. Upon receipt of the letter set out above the defendant directed the Ottumwa Bank to forward to the Osceola Bank the Canny sale notes, amounting to six hundred and seventy-two dollars and sixty-five cents, the same having evidently been repurchased by the Osceola Bank under its option. And defendant also gave credit upon the Bingman note as requested. The balance remaining of the one thousand five hundred dollars the defendant

claims to hold upon the individual indebtedness of George H. Cowles as of right, and by reason of an alleged agreement with Cowles, made, as is claimed, at the time the draft was delivered. And here arises the conflict between these parties. Defendant claims that the draft and the letter above set out were delivered to him personally by Cowles at the city of Ottumwa, and that at this time Cowles authorized him to apply the balance remaining of the draft, after crediting the Bingman note and taking out the amount of the Canny sale notes, upon certain individual notes of Cowles, and that he, defendant, wanted to apply it on another individual indebtedness which Cowles was owing; and that they did not agree upon which debt it should be applied upon, and that no credit has in fact been made to this day because thereof, but that he, defendant, is ready and willing to credit it any time, as may seem best, or as may be agreed. The receiver insists that defendant is in error in these claims, that he (defendant) had no personal interview with Cowles, but that all the transactions between him and Cowles were in writing, and that from these writings it is clear that defendant was not authorized to use any part of the draft sent him in paying Cowles' individual debts, and that defendant at all times knew that the bank had charged his account with the amount of this draft, and was crediting him with the amount of payments made to the bank upon notes given to it, and which it had rediscounted to defendant, and that defendant never made any objection thereto, but always, until the commencement of this suit, acquiesced therein. It should be stated, in this connection, that George H. Cowles died some time before this cause came on for trial, and neither party had the benefit of his testimony. As bearing upon the issue of fact thus sharply presented, the following letter was introduced:

Exhibit E: "Osceola, Iowa, Dec. 22nd, 1887. Seth Richards, Esq., Oakland, Californa—Dear Sir: So far I have not been able to make the remittances that you requested. In fact I was very much surprised that you should ask it, as I went to Ottumwa to see you about these matters, and you told me you did not want the money; and I am not prepared to pay it. In fact the $4,000.00 note is not due until spring, and you told me, by paying up the interest, which was all you wanted, the others could run, as I presumed, another year. Soon after I came home, you sent up the Mason note, saying you needed some money. Mason could not pay then, and think, to accommodate you, I sent you a draft for $1,500.00, and requested you to apply $200.64 on E. W. Bingman & Co. note, and send the bank here the following notes, with which I would give you credit, viz.:

Michael Cronin ......................................$ 98 70
J. and C. T. Ayres.................................... 7 00
Alonzo and Robert Adams............................ 85 00
J. J. and A. M. Baker................................ 20 00
Frank D. and W. K. Blakely.......................... 27 00
G. W. Bevans ..................................... 126 00
W. S. Cline........................................ 50 00
Henry J. Dipperman................................. 26 95
W. J. Hamilton.....................:................ 58 50
Michael Meany .....................................: 50 00
F. M. Rife ........................................ 15 50
Henry Twyford ................................. .. 45 00
Andrew Welch .................................... 63 00

                                                    ――――――
                                                    $672 45

"I charged you with the $1,500.00, and credited you with the payment on Bingman & Co. note, $200.64, and intended to credit you with these others as soon as they came, and then settle the interest on my note that was due this fall, and pay up the interest on W. C. Needles & Co. note, and give you credit. That would probably leave a small balance due you, which I would have the bank remit to you. W. C. Needles & Co. note I can't well pay till I can close that business, and so explained to you at Ottumwa. I am in hopes to do that soon. I have delayed writing you some days, as I thought may be I could send you the money, but money in Iowa is very close, and banks all around are very close up. I will embrace the first opportunity to borrow the money elsewhere, and pay you off. I trust this will be satisfactory to you. Yours, truly, Geo. H. Cowles."

This is the substance of testimony as we gather it from the record, and, as applicable thereto, the court in effect instructed the jury that they must determine therefrom, and from all the evidence, whether the transaction with reference to the one thousand five hundred dollar-draft was one between the defendant and the bank, and such a one as would authorize the bank to make the charges against defendant that it did, or whether it was a transaction betweeen George H. Cowles individually and the defendant; that, if it was the former, plaintiff might recover the balance due; if the latter, he could not. The jury evidently found that the transaction was one between the bank and defendant, and that the bank was authorized to charge the defendant with the amount of the draft. In answer to interrogatories submitted to them, the jury found specially that defendant borrowed the one thousand five hundred dollars in question from the Osceola Bank by overdraft; that in accepting and receiving the draft defendant was dealing with the bank, and not with Cowles individually; and that the bank made the charge against defendant on its books with his knowledge or consent, or with the knowledge and consent of his agent.

One of the main complaints of appellant is that the court erred in not giving to the jury a peremptory instruction to find for him. Such an instruction was asked and refused. The defendant also, in the same connection, contends that the special findings above set forth are wholly without support in the testimony. We think there was sufficient testimony to justify the court in instructing as it did, and that the jury had evidence in the letters we have set out which, when applied to the conceded facts, would justify them in finding that the one thousand five hundred dollar-draft transaction related wholly to the affairs of the bank, and not to the individual relations between Cowles and defendant. The letter of the eleventh which accompanied the draft clearly stated that the bank had again opened an account with defendant, had charged him with the amount of the draft, and credited him on this account with the amount paid on the Bingman note. It also proposed to credit him with the Canny sale notes as soon as received, and also with certain amounts which Cowles proposed to pay in a short time on his individual indebtedness. There can be no question but that Cowles clearly stated that he had opened an account on the books of the bank with defendant, and proposed to continue it. Again, the jury were justified in finding that the defendant had written the bank, asking for money from it, not from Cowles individually. We do not, as we have said, have this letter, but it was written to John W. Richards, who was president of the bank, after his agency had been revoked by defendant, and the jury were justified in finding that the demand was for money from the bank, and not from Cowles individually. Defendant never made any objection to the bank's opening an account with him, as the vice president, Cowles, stated it had done, and by his silence evidently acquiesced therein. The letter of December 27, 1887, throws some additional light on the transaction, and this again clearly notifies defendant that he is charged by the bank with the draft, and credited with certain payments. And it also discloses an intention to credit certain other items, but this intention was never carried out. So that defendant knew on December twenty-second that the bank had an open account against him on its books, and he never objected thereto. This last letter also throws some light on the Ottumwa interview between Cowles and defendant at or about the time the draft was delivered to the defendant, and the jury may have found that the defendant's version of the transaction therein, so far as he claimed Cowles authorized him to apply the balance of the draft after deducting certain bank items on the individual debts of Cowles, was incorrect. This much is certain: that on December twenty-second defendant was again notified that the bank had opened an account with him, and he made no objection thereto, but seemingly acquiesced therein, and ratified the same. If the jury looked at the case

in this light, as they well might, then the special findings have sup-
port in the testimony. The transaction may, to the extent of the
balance due on the draft after making the credits directed, be treated
as a loan by defendant from the bank; at least an overdraft with
defendant's knowledge and consent. The second finding, that the
transaction as to the one thousand five hundred dollar-draft related
to bank business, and not to the individual business of Cowles, has
support. And the third finding, that the charge. upon the books of
the bank was made with defendant's knowledge and consent, or
with the knowledge and consent of his agent, is not without support,
for, if defendant after knowledge thereof acquiesced therein, and
ratified it, it is of the same effect as if he had been present and
seen the same made. Acquiescence and ratification relate back to
the time the charge is made, and are the same in effect as express
authorization.

Defendant has cited us a number of authorities to the effect
that the defendant had the right to presume that the bank had
received value received for the draft, and that it was issued for a
valuable consideration passing to it from Cowles, or from the person
to whom it was issued, and that he was not bound to take notice
that the bank had charged the same to him. That the draft was like
a certified check in this: that, as the bank could not be heard to say
that it had no funds of the maker of a certified check in its posses-
sion, no more can it be permitted to deny that it received the money
for the draft. No doubt the law is as counsel state it, and, did this
case rest upon the draft alone, there would be much force in his
position. But plaintiff does not rely upon the draft alone. He bases
his right to recover upon the transactions environing the delivery of
the draft, which we have heretofore set out.

II. Complaint is made of the rulings of the court in the admis-
sion and rejection of testimony, and of his refusal to give certain
instructions asked by defendant. In so far as these assignments
are of any importance, they are covered by what we have already
said, and we see no error therein. The instructions asked, in so far
as they were correct, were given by the court. The instructions
given covered the issues presented by the pleadings fairly and
clearly, and were not erroneous.

III. Lastly, it is insisted that the general verdict is excessive.
The amount found due by the jury was nine hundred and seventy-
seven dollars and ninety-three cents. But plaintiff remitted all in
excess of eight hundred and seventy-five dollars and twenty cents,
and judgment was rendered for the last-named amount. Defendant
claims the account should be stated in this wise: Defendant debtor
to amount of draft, one thousand five hundred dollars. Credit by
amount of Canny sale notes, six hundred and seventy-two dollars
and forty-five cents; by amount paid on Bingman note, two hundred
dollars and sixty-four cents; total, eight hundred and seventy-three

dollars and twenty-nine cents. Deducted from debit account, leaves net balance of six hundred and twenty-six dollars and seventy-one cents, which, with interest to date of trial at six per cent., amounts to but seven hundred and seventy-nine dollars and eighty-three cents. Or, if interest be counted from six months after date of last item, then the total amount, with interest, is seven hundred and sixty-one dollars and three cents. We think there is an error in computation, and that the defendant's figures are correct. The net balance due plaintiff was six hundred and twenty-six dollars and seventy-one cents. Add to this six per cent. interest thereon from May 11, 1888, to time of trial, December 7, 1891, and we have the sum of seven hundred and sixty-one dollars and four cents. And this is the amount for which the verdict should be. At plaintiff's election, he may have judgment in this court for that amount, with interest at six per cent. per annum from December 7, 1891; but if he does not so elect within sixty days from this date, the cause will be reversed. The plaintiff will pay one-fourth of the costs of this appeal and defendant the remainder.—*Modified and affirmed.*